IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHELLE JAMES,<br><br>            Plaintiff,<br><br>      v.<br><br>HARRAH'S RESORT ALTANTIC CITY,<br>et al.<br><br>            Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 14-5434 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

Kenneth Francis Psota, Esq.
199 New Road, Office 3
Linwood, NJ 08221
      Attorney for Plaintiff

Christopher C. Mauro, Esq.
Camacho Mauro Mulholland LLP
250 Fifth Avenue, Suite 5101
New York, NY 10118
-and-
Reena Shah, Esq.
20 Nassau Street, Suite 308
Princeton, NJ 08542
      Attorneys for Defendants

**SIMANDLE, Chief Judge:**

### I. INTRODUCTION

In this case, Plaintiff Michelle James alleges that she contracted bed bugs during a hotel stay at Harrah's Resort Atlantic City. Plaintiff brings claims against the resort and related corporate entities for negligence; negligent infliction

of emotional distress; intentional infliction of emotional distress; nuisance; breach of contract; breach of warranties; malicious, willful and intentional business practices; and punitive damages. Essentially, Plaintiff claims that the hotel breached its duty to provide its guests with a safe environment and failed to properly train its employees in how to detect and report bed bugs, causing her severe pain and lasting emotional distress. Pending now before the Court is Defendants' motion to exclude Plaintiff' expert, Andrew Sutor [Docket Item 39], and Plaintiff's motion for partial summary judgment on certain claims and issues in the case. [Docket Item 40.] For the reasons that follow, the Court will grant Defendants' motion to exclude Mr. Sutor's proposed expert opinion testimony and grant in part and deny in part Plaintiff's motion for partial summary judgment.

## II.   BACKGROUND[1]

Plaintiff Michelle James was a guest at Harrah's Resort Atlantic City on September 29-30, 2013 after she and a friend, Belinda Booker, were provided with a free hotel room by the Resort. (Plaintiff's Statement of Material Facts ("SMF") Ex. A (Defendants' Response to Plaintiff's Request for Admissions) at

---

[1] The Court distills this undisputed version of events from the parties' statements of material facts, affidavits, and exhibits, and recounts them in the manner most favorable to Defendants, as the parties opposing summary judgment.

¶¶ 2-3.) Plaintiff was woken up in the middle of the night by a "severe itching and burning sensation" and found bed bugs "scattering across the bed" after she turned on the lights and removed the top sheet from her hotel bed. (Pl. SMF Ex. C (Plaintiff's Answers to Defendants' Interrogatories) at ¶ 2.) Plaintiff admits to having inspected the bed sheets before lying down and admits that did not observe any bed bugs at that time. (Defendants' Counterstatement of Material Facts ("CSMF") Ex. C (Michelle James Deposition ("James Dep.") at 38:3-22.) Plaintiff took several photos of the bugs that she found in her bed and called the front desk to complain. (Pl. SMF Ex. C at ¶ 2; see also Pl. SMF Ex. L (photos).) She then went down to the front desk, and the Resort moved her to a new room in a different tower. (Pl. SMF Ex. A at ¶¶ 13-15.) Before checking out on September 30, Plaintiff filed a Guest Incident Report with the Resort reporting the bed bug incident. (Id. at ¶ 13.) Plaintiff's incident report indicates that she was bitten by bed bugs in room 16009, but apparently the Resort's "Room Occupier Tracking" indicates that a different guest checked into that room. (Def. CSMF Ex. J (Plaintiff's guest incident report and defendant's room occupier tracking for room 16009).)

It was Harrah's policy in 2013 to require guests to fill out an incident report when they made a complaint about a hotel room. (Def. CSMF Ex. F (Deposition of David Kening ("Kening

Dep.")) at 39:19-24.) This was a change in policy from 2010-2012, when Harrah's had its own security, instead of individual guests, prepare computerized incident reports when guests complained about bed bugs in the hotel. (Pl. SMF Ex. A at ¶¶ 23-26.) It was also Harrah's policy at the time of Plaintiff's incident to temporarily remove a hotel room from service if a guest complained about their room. (Def. CSMF Ex. E (Deposition of Kerry Millett ("Millett Dep.")) at 14:14-17; see also Kening Dep. at 40:12-15.)

Harrah's protocol regarding bed bugs at the time of Plaintiff's incident in 2013 was as follows: if a guest room attendant discovered a problem with bed bugs while cleaning a room, he or she was supposed to report it to a supervisor, who noted the room for Ecolab, a pest control service, to inspect and treat on the next available day. (Millett Dep. at 14:1-15:24.) If a guest reported a problem with bed bugs, the front desk notified housekeeping, which noted the room for Ecolab. (Id. at 15:18-24; Kening Dep. at 41:11-13.) Ecolab came to the Resort every morning, Monday through Friday, and inspected and treated the rooms that had been reported with pest problems. (Millett Dep. at 14:18-23.) Rooms that were marked for Ecolab were taken out of commission and were not otherwise cleaned by Harrah's own housekeeping department. (Kening Dep. at 41:14-24.) Ecolab generated its own report documenting pest problems. (Def.

4

CSMF Ex. I.) Harrah's did not use mattress encasements or other "bed bug entrapment devices, or traps" in its hotel rooms and the rooms did not have written warnings to guests to check the room for bed bugs. (Millett Dep. at 40:1-22.) According to Plaintiff, Harrah's received "84 insect-related Guest Incident Reports from 2012-2013, nine Code Enforcement Complaints from Atlantic City Code Enforcement, and hundreds of Eco-Lab room inspection invoices for bed bug related work," but failed to include any of those records as a part of the record before this Court on the instant motions. (Pl. Br. at 4.)

Harrah's housekeepers were trained to identify and deal with bed bugs, and supervisors were "always . . . talking about prevention of bed bugs or, you know, chinches." (Def. CSMF Ex. D (Deposition of Katy Jimenez Valentin ("Valentin Dep.") at 17:19-19:1; see also Millett Dep. at 18:6-14.) Bed bug training was provided by means of a video. (Valentin Dep. at 17:19-24.) When hiring guest room attendants, Harrah's had no minimum education requirement and required its employees to, at minimum, understand some English. (Millett Dep. at 32:21-12.) Supervisors were required to have a high school education. (Id.) New guest room attendants had two weeks of daily training from 9-5 at the Resort when they first started. (Valentin Dep. at 15:19-16:8.) Follow-up trainings are required of all guest room attendants "every year twice a year." (Id. at 16:9-20.)

Plaintiff discarded many of her belongings when she returned home from her stay in Atlantic City after discovering the bed bugs. (James Dep. at 18:25-19:8.) She suffered bites on her left shoulder and wrist, some of which left permanent scars. (Pl. SMF Ex. C at ¶ 3.) She "still suffers severe mental anguish, humiliation, anxiety, nightmares, and insomnia as a result of the incident" and has "great difficulty falling asleep in a dark room and has problems sleeping through the night." (Id.)

Plaintiff filed the instant lawsuit on August 28, 2014. [Docket Item 1.] After exchanging fact and expert discovery, Defendants filed the instant motion to exclude Plaintiff's expert, Andrew Sutor, pursuant to Daubert and Rules 702 & 703, Fed. R. Evid. [Docket Item 39], and Plaintiff moved for partial summary judgment on certain claims and issues in the case. [Docket Item 40.] These motions are now fully briefed. The Court held oral argument on Defendants' Daubert motion on September 6, 2016.

## III. STANDARD OF REVIEW

### 1. Defendants' Daubert Motion

The admissibility of Mr. Sutor's testimony is subject to the Federal Rules of Evidence, which mandate that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's

6

scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Expert opinions may be based on

facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

This Rule has been distilled into "a trilogy of restrictions on expert testimony: qualification, reliability, and fit." Schneider ex. rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (citation omitted). Qualification refers to the requirement that the witness possess specialized expertise. The Third Circuit has "interpreted the specialized knowledge requirement liberally, and ha[s] stated that this policy of liberal admissibility of expert testimony extends to the substantive as well as the formal qualification of experts." Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir. 1998) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994)).

Reliability means that the expert's testimony must be based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation," and "[p]roposed testimony must be supported by appropriate validation . . . ." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590 (1993). Daubert announced a nonexhaustive list of factors that bear on the inquiry of reliability: (1) whether the theory or technique can be and has been tested, (2) whether the theory or technique has been subjected to peer review, (3) the known or potential rate of error and the existence of and maintenance of standards controlling the technique's operation, and (4) general acceptance of the practice. Oddi v. Ford Motor Co., 234 F.3d 136, 144-45 (3d Cir. 2000) (quoting Daubert, 509 U.S. at 593-97). "[A]ny step that renders the analysis unreliable under the Daubert factors renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 745 (3d Cir. 1994); see also In re TMI Litig., 193 F.3d 613, 695 (3d Cir. 1999); In re Human Tissue Products Liab. Litig., 582 F. Supp. 2d 644, 656 (D.N.J. 2008). However, reliability does not require correctness. In re Paoli, 35 F.3d at 744. Rather, the party need only demonstrate "by a preponderance of the evidence" that the expert's opinion bears adequate indicia of reliability, not that it is

8

objectively "true." Krys v. Aaron, 112 F. Supp. 3d 181, 190 (D.N.J. 2015.)

The fit requirement "goes primarily to relevance" by "requir[ing] a valid scientific connection to the pertinent inquiry as a precondition to admissibility." Daubert, 509 U.S. at 591-92. "In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." Schneider, 320 F.3d at 404 (citations omitted).

**2. Plaintiff's Motion for Partial Summary Judgment**

Federal Rule of Civil Procedure 56(a) generally provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" such that the movant is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts, however, fail to preclude the entry of summary judgment. Id. Conclusory, self-serving submissions cannot alone withstand a motion for summary judgment. Gonzalez v. Sec'y of Dept. of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012) (internal citations omitted).

In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, and must provide that party the benefit of all reasonable inferences.  Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).  However, any such inferences "must flow directly from admissible evidence [,]" because "'an inference based upon [] speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.'"  Halsey, 750 F.3d at 287 (quoting Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n. 12 (3d Cir. 1990); citing Anderson, 477 U.S. at 255).

Partial summary judgment may be granted as to some but not all claims or parties. Further, as provided in Rule 56(g), F. R. Civ. P., the court "may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case." The court has discretion, after it has determined that it cannot grant all the relief requested in the summary judgment motion, to decide whether certain material facts are nonetheless not in dispute, applying the summary judgment standard. Notes of the Advisory Committee to Rule 56 (2010 Amendments). In doing so, the court should exercise care to not assume a fact is uncontested simply because the party opposing summary judgment

10

successfully elected to contest other material facts without necessarily contesting all possible facts. Id.

## IV.  DISCUSSION

### A. Defendants' Daubert Motion

First, Defendants seek to bar Plaintiff from referencing her expert's report and to preclude his testimony at the time of trial. [Docket Item 39.] Plaintiff designated Andrew Sutor, a "senior security executive and former university teacher with extensive law enforcement operations and casino hotel security background," (see Resume, Ex. A to Expert Report [Pl. Opp. Ex. C [Docket Item 47-4]) as an expert to render an opinion on "the necessary level of safety required to protect fellow guests from harm" (see Methodology, Ex. B to Expert Report) to support her claims in this case. After reviewing materials produced in this litigation, along with other sources appended to his Report as Exhibits C through N, Mr. Sutor concluded as follows:

> [I]t is the expert opinion of this expert that the bedbug biting incident and injuries to the Plaintiff were caused by a combination of lax and lacking maintenance practices and ineffective and careless hotel room inspections and poor security reporting methods in the Defendant's casino hotel. I find that this incident was foreseeable and that the inspection and maintenance measures at the Harrah's Casino Hotel, in Atlantic City, New Jersey on September 29-30, 2013 were wholly inadequate, grossly negligent and grossly reckless.

(Expert Report at 4.) Mr. Sutor found that "[t]he serious injury to the Plaintiff was the result of a preventable incident that

was a foreseeable event given the history of prior incidents . . . and the nature of the Defendant's business." (Id. at 7.) He determined that the Resort provided sub-standard maintenance in its hotel rooms, in part because there were an insufficient number Guest Room Attendants and housekeeping supervisors on duty at the time of Plaintiff's incident, and because Harrah's employed foreign workers "from third-world countries where health, cleanliness, and sanitary standards are lower than that of typical Americans" with presumably poor English skills who were inadequately trained and supervised. (Id. at 9-10.) He further opined that Defendant's move from requiring its security department to track bed bug incidents to a computerized incident report system encouraged underreporting and "spoliation of evidence" in tracking bed bug incidents. (Id. at 10.)

Defendants challenge the admissibility of Mr. Sutor's testimony on the grounds that he has failed to meet the standards set by Rule 702, Fed. R. Evid., and Daubert and its progeny. Specifically, Defendants argue that Mr. Sutor is not qualified to render an opinion in this case, that his report is not reliable, and that it is not helpful to the trier of fact. For the following reasons, the Court will grant Defendants' motion.

First, Defendants object that Mr. Sutor is not qualified to render an opinion on a hotel's bed bug policies because his

12

experience is "adjacent to, but not actually encompassing, the subject matter of his testimony." (Def. Mot. at 5.) In support, Defendants note that Mr. Sutor admits that he has never worked in housekeeping or for an extermination company (Def. Mot. Ex E (Deposition of Andrew Sutor ("Sutor Dep.") [Docket Item 39-8] at 30:6-10, 30:23-31:3) and that he is not an expert in the control of bed bugs and had to do his own research in order to prepare his expert report. (Id. at 34:7-35:17.) Defendants also point out that Mr. Sutor admits that he does not know what, specifically, Harrah's does to take care of bed bugs (id. at 67:17-68:15) and that he does not know, and did not do any research into, Ecolab's inspection and extermination services provided to Harrah's Resorts. (Id. at 56:11-57:4.)

In opposition, Plaintiff argues that Mr. Sutor's past experience makes him qualified to render an opinion "in the fields of security and hospitality," and specifically as to the steps a hotel should take to protect the health and safety of its guests. (Pl. Br. at 4.) Plaintiff notes that Mr. Sutor's hospitality experience includes "[writing] the security manual" for Harrah's (id. at 72:10-12), overseeing environmental services and housekeeping for public spaces at the Trump Plaza casino (id. at 26:16-28:2), and inspecting foreign and domestic casino hotel rooms for "general cleanliness and security issues" as the President of U.S. Casino Management, Inc. (Id. at 25:1-

13

11.) Mr. Sutor purports to be a "security expert," not a housekeeping or exterminating expert (Sutor Dep. at 72:10-24), but Plaintiff believes that his testimony is tailored to this action because Mr. Sutor's testimony addresses Harrah's change in policy from having its security department handle bed bug complaints to having individual guests fill out incident reports.

Next, Defendants argue that Mr. Sutor's opinion is not reliable because he does not reference any industry standards, protocols, or policies on which he bases his conclusions in his report. Mr. Sutor says in his report that he applied his "background, experience, education and specialized training and expert knowledge in the area of hotel management and private security" to "perform a risk analysis taking into consideration the nature of the Defendant's business and analyzing the level of risk in the area in general and the specific location." (Expert Report at 2.)

The Court finds that Mr. Sutor has not followed any methodology that would render his opinion reliable, and rather produces an opinion that is "subjective belief or unsupported speculation." Daubert, 509 U.S. at 590. The record does not demonstrate how Mr. Sutor would define his "methodology," and what particular industry norms informed his decision to consider the materials he relied on in this case to reach his conclusion

14

about Harrah's inadequate maintenance staff and policies. He seems to have relied heavily on his own security handbook and articles, along with a random smattering of news articles and anonymous newsletters, and nothing from any kind of organized hotel management or housekeeping association or hotel management school.

Finally, Defendants argue that Mr. Sutor's report does not assist the trier of fact because his opinion utilizes an inapplicable standard of care for this case – that applicable to a negligent security matter, where this case is about allegedly inadequate hotel maintenance and hygiene measures.

In addition to Mr. Sutor's lack of education, training and experience in matters of public health, and the lack of a reliable methodology underlying the opinions about industry norms in combatting bed bug infestations in hotels, the proffered opinion also suffers from a lack of "fit." The requirement that an expert's opinion must fit the circumstances of the case assures that the witness's specialized opinion is pertinent to the relevant area of inquiry of the case. Daubert, 509 U.S. at 591-92. The first area of lack of fit is the factual circumstances – he renders an opinion about the supposed deficiencies without actually knowing and considering Harrah's protocol for bed bugs and the nature of Ecolab's services in Harrah's guest rooms. (Sutor Dep. at 67:17-68:15, and 56:11-

57:4.) The second area of lack of fit pertains to the subject matter itself: Mr. Sutor, with experience in hotel security, attempts to portray this bed bug case as a security matter and offers views about what the defendant's security department should have done. The case presents, instead, an issue of sanitation and health in detecting and eradicating insects from hotel rooms. Mr. Sutor admittedly has no experience addressing such problems. That Harrah's previously used security personnel to collect and forward such reports of bed bug problems at times prior to Plaintiff's hotel stay does not somehow convert a case involving personal injury from insect bites into a security case involving protection against criminal intruders. Mr. Sutor's analysis and opinions do not fit the area of relevant inquiry and would thus not be helpful to the jury's determination of Defendant's liability.

Accordingly, Defendant's motion to strike Mr. Sutor's expert reports and opinions will be granted pursuant to Rules 702 & 703, F. R. Evid.

### B. Plaintiff's Motion for Partial Summary Judgment

Next, Plaintiff seeks summary judgment on her claims of nuisance (Count 4), breach of contract (Count 5), breach of warranties (Count 6), and malicious, willful, and intentional business practices (Count 7), and on issues including the cause

of Plaintiff's injuries, spoliation of evidence, and several of
Defendants' affirmative defenses. The Court finds as follows.

### 1. Nuisance

Plaintiff's nuisance claim is premised on the allegations
that the "bed bug infestation deprived Plaintiff of a safe,
healthy and comfortable use of" the Resort and that that
"dangerous and defective conditions" of the Resort "constituted
a nuisance and presented an unreasonable interference with the
Plaintiff's use and enjoyment of the hotel room." (Am. Compl. ¶¶
53-54.) Plaintiff argues that she is entitled to summary
judgment on this claim because the undisputed presence of bed
bugs in a hotel room constitutes "a material interference with a
guest's ordinary comfort and created an unreasonable
interference with their [sic] guest's use and enjoyment of the
hotel room." (Pl. Br. at 7.) Defendants take the position that
Plaintiff is not entitled to summary judgment because she cannot
establish a prima facie case for nuisance.

Under New Jersey law, a "cause of action for private
nuisance derives from the defendant's unreasonable interference
with the use and enjoyment of the plaintiff's property." Ross v.
Lowitz, 120 A.3d 178, 185 (N.J. 2015) (citing Sans v. Ramsey
Golf & Country Club, Inc., 149 A.2d 599, 605 (N.J. 1959)). To
establish a nuisance, a plaintiff must demonstrate that "there
has been an unreasonable, unwarranted or unlawful use by a

person of his real property which is resulting in a material
annoyance, inconvenience or hurt." <u>Rowe v. E.I. Dupont De
Nemours and Co.</u>, 262 F.R.D. 451, 459 (D.N.J. 2009) (citing
<u>State, Dept. of Environmental Protection v. Exxon Corp.</u>, 376
A.2d 1339 (N.J. Super. 1977)).

The Restatement provides that liability for a private
nuisance exists

> <u>only</u> <u>to</u> <u>those</u> <u>who</u> <u>have</u> <u>property</u> <u>rights</u> <u>and</u> <u>privileges</u> in
> respect to the use and enjoyment of the land affected,
> including (a) possessors of the land, (b) owners of
> easements and profits in the land, and (c) owners of
> nonpossessory estates in the land that are detrimentally
> affected by interferences with its use and enjoyment.

Restatement (Second) of Torts § 821E (emphasis added). This
section "merely enumerates the classes of persons who
unquestionably have property rights and privileges in respect to
land" but is not exhaustive, and does not define "when a
person's rights and privileges in respect to land constitute
property rights and privileges." Comment b to Restatement
(Second) of Torts § 821E. Defendants assert that, as a licensee,
Plaintiff has no protectable property interest in her hotel
room. It is true that New Jersey courts have yet to define the
nature of a hotel guest's property interest in her room, and
that, as a general rule "guests in a hotel are mere licensees
and not tenants, and they have only a personal contract and
acquire no interest in the realty." <u>In re Ocean Place Dev., LLC</u>,

18

447 B.R. 726, 732 (Bankr. D.N.J. 2011). Nevertheless, hotel
guests have an expectation of privacy in their room under the
Fourth Amendment, Stoner v. California, 376 U.S. 483, 489-90
(1964), and have the ability to exclude others from their room
by lock and deadbolt on every door. Whether Defendants' bed bug
protocol constitutes a failure to act that resulted in an
"intentional and unreasonable interference" with Plaintiff's use
of her hotel room presents a factual question better left for
trial. Plaintiff's motion for summary judgment as to her
nuisance claim is denied.

### 2. Breach of Contract

Count 5 of the Amended Complaint avers that Plaintiff and
Defendants entered into a contract when she checked into her
hotel room at Harrah's Resort, and that Defendants breached that
contract "by providing an uninhabitable and unsanitary room
which was infested with bed bugs." (Am. Compl. ¶¶ 59-60.)

To prevail on a breach of contract claim under New Jersey
law, a plaintiff must prove that (1) a valid contract existed,
(2) that the defendant failed to perform under the contract, (3)
that plaintiff performed her obligations under the contract, and
(4) that failure to perform caused injury to the plaintiff. See
Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.,
275 F. Supp. 2d 543, 566 (D.N.J. 2003). A valid contract, in
turn, requires "mutual assent, consideration, legality of the

19

contract, capacity of the parties, and formulation of
memorialization." Webster v. Dollar General, -- F. Supp. 3d --,
2016 WL 3769748, at *9 (D.N.J. 2016).

The parties dispute whether a contract was legally formed
between Plaintiff and Harrah's Resort, and accordingly the Court
will deny Plaintiff's motion for summary judgment on her breach
of contract claim. The parties dispute whether there was a
"meeting of the minds" as to the terms of the purported
contract, whether paying taxes and fees on a complementary hotel
room can constitute valid consideration, and what, if any,
compensatory damages Plaintiff suffered. Moreover, even if a
contract were legally created, Plaintiff has not met her burden
of proof to show that the presence of bed bugs in her hotel room
constitutes a breach of any particular term of that contract.
These disputes present questions for a jury to resolve. "If
there is a genuine dispute of fact as to any essential element
of the contract's existence, that dispute can only be resolved
at trial." Selective Way Ins. Co. v. Glasstech, Inc., --F. Supp.
3d --, 2016 WL 2869054, at *6 (D.N.J. May 17, 2016).

### 3. Breach of Warranties

Plaintiff's breach of warranties claim arises from her
belief that Harrah's made, and failed to perform, "explicit and
implicit promises" to provide a safe and habitable hotel staffed
with housekeeping who were adequately trained. Plaintiff's claim

20

appears to raise two different species of breach of warranty claims: breach of express warranty and breach of the implied warranty of habitability.

To prevail on a breach of express warranty claim, a plaintiff must show that (1) Defendants made an affirmation, promise, or description that became part of the basis of the bargain, and (2) the goods ultimately did not conform to the affirmation, promise, or description. See Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84, 103 (D.N.J. 2011). "[W]hether a particular representation made by the seller amounts to an express warranty, as opposed to mere puffery, is normally a question for the trier of fact." Peruto v. TimberTech Ltd., 126 F. Supp. 3d 447, 455 (D.N.J. 2015) (discussing Gladden v. Cadillac Motor Car Division, 416 A.2d 394 (N.J. 1980)). Because factual questions remain over what, if any, "affirmations, promises, or descriptions" of Harrah's Resorts hotel rooms were made, and whether those representations are actionable on a breach of express warranty claim or mere puffery, the Court will deny Plaintiff's motion for summary judgment on Count 6 to the extent that Plaintiff seeks to vindicate a breach of express warranty for promises made during the formation of a purported contract between Plaintiff and Defendants.

On the other hand, an implied warranty of habitability inheres in every residential lease and represents a promise by a

landlord that "there are no latent defects in facilities vital
to the use of the premises for residential purposes . . . ."
Marini v. Ireland, 265 A.2d 526, 534 (N.J. 1970). Defendants
assert that Plaintiff cannot bring a claim for breach of the
implied warranty of habitability because she was not in a
landlord-tenant relationship with Harrah's Resort and, as a
hotel guest, no such covenant was implied in the terms of her
stay. The Court agrees. No New Jersey court has recognized an
action for breach of the implied warranty of habitability by a
hotel guest.[2] Although the state may prescribe by statute and
regulation minimum "standards for habitability," see, e.g.,
N.J.A.C. 5:10 et seq. & N.J.S.A. 55:13A et seq., those standards
do not provide a plaintiff with a private right of action.
Instead, those standards may inform the duty of care owed by a
hotel to its guests in a negligence action. Plaintiff's motion
for summary judgment as to her claim for breach of implied
warranty of habitability will be denied.

---

[2] Plaintiff asserts, in support of her claim, that the New Jersey
Supreme Court held in Holly v. Meyers Hotel & Tavern, Inc. that
"hotel owners are not to unjustifiably interfere with a guest's
enjoyment and use of her hotel room." 89 A.2d 6 (N.J. 1952).
Setting aside the fact that Plaintiff has not drawn a logical
connection between this statement and the viability of her
implied warranty of habitability claim, Plaintiff misconstrues
the holding of Holly: the Court merely held that a hotel could
be liable in negligence "if the defendant hotel knew, or had
reason to know, of the danger of injury to passers-by from the
acts of its transient guests." Id. at 7.

### 4. Malicious, Willful and Intentional Business Practices

Plaintiff's malicious, willful and intentional business practices claim is premised on allegations that "Defendants owed a duty of care to the Plaintiff . . . to ensure that nothing unjustifiably interferes with a guest's use and enjoyment of his or her hotel room, to provide a safe environment for those persons . . . and to ensure that each hotel room was free from any bed bug infestation" and that Defendants breached that duty by, inter alia, "knowingly and deliberately" failing to hire, train, and supervise adequate housekeeping and security staff; by failing to maintain adequate procedures in place to prevent bed bug incidents from re-occurring; and by reducing its budget and cutting hotel staff. (Am. Compl. ¶¶ 69-74.)

Defendants argue that Plaintiff's motion for summary judgment should be denied on this claim because she has not presented a cognizable claim for relief. The Court agrees: there is no independent cause of action to vindicate harm caused by "malicious, willful and intententional business practices." Plaintiff cites to Taylor v. Metzger to argue that Count 7 presents a viable tort claim, but again fundamentally misrepresents the New Jersey Supreme Court's holding. In that case, the Court explicitly declined to recognize a claim in "prima facie tort," or a cause of action that "would encompass

23

the intentional, willful and malicious harms that fall within the gaps of the law." 706 A.2d 685, 701 (N.J. 1998).[3]

Additionally, even if this count did present a cognizable claim, Plaintiff has adduced no evidence that Defendants engaged in any intentional conduct towards her in particular, or any intentional practices with respect to bed bugs. Instead, the evidence Plaintiff points to in support of her claim on Count 7 would be better directed towards her negligence claim not addressed in the instant motion, including testimony suggesting that Defendants apparently hired too few, under-trained, and under-educated housekeepers; that Defendants' change in policy from having security track bed bug complaints to relying on guest-generated incident reports led to under-reporting of bed bugs; and that the hotel did not provide mattress encasements or other bed bug entrapment devices.

Accordingly, the Court will deny Plaintiff's motion for summary judgment on Count 7.

### 5. Injury

Plaintiff also seeks partial summary judgment on the issue of causation of her injuries; this will be an essential element

---

[3] Defendants have not cross-moved to dismiss this count, so this Court does not examine this part of the Amended Complaint to determine whether such a cause of action exists under New Jersey law. If Plaintiff cannot find legal support for such a theory, Plaintiff is invited to voluntarily dismiss this claim and pursue the other various claims.

to Plaintiff's negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress claims not currently before the Court on this motion. Plaintiff takes the position that she is entitled to summary judgment on the issue of causation because "[i]t is clear that the bed bug bites sustained by Ms. James at the Defendants' hotel was the direct cause of her physical and mental injuries" (Pl. Br. at 7.); Defendants argue that summary judgment is unwarranted because they dispute the nature and extent of her injuries.

While there is nothing in the record sufficient to raise a question of fact as to whether the presence of bed bugs in Harrah's Resort led to Plaintiff's physical and psychological injuries, Plaintiff has not conclusively shown, on the record before the Court, that Defendants' conduct was a proximate cause of her injuries sufficient to establish causation in a tort action and hold Defendants liable. Similarly, as Defendants point out, there is not sufficient evidence in the record to conclusively prove the extent of Plaintiff's injuries in this case -- there are two different psychological expert reports, as well as Plaintiff's subjective account of her injuries, and it is up to a jury to make credibility determinations. For these reasons, the Court will deny Plaintiff's motion for summary judgment on the issue of damages, an issue best left for trial.

**6. Spoliation of Evidence**

25

Next, Plaintiff seeks partial summary judgment on the issue of spoliation of evidence, arguing that she is entitled to an adverse inference against Defendants for the missing electronic records pertaining to her stay at Harrah's Resort. According to Plaintiff, Defendants were on notice of potential litigation arising from Plaintiff's stay as soon as she filed her Guest Incident Report, and their failure to properly maintain electronic records -- namely, it appears, what room she actually stayed in --  has prejudiced her ability to prosecute her case. Defendants take the position that they were under no duty to preserve their data, and contend that any loss of electronic information is due to Plaintiff's error in listing the incorrect room on her Guest Incident Report and Defendants' ordinary 90-day data retention policy.

Plaintiff has not made clear how an adverse inference would impact the elements of any of the claims she has before the Court. There is nothing in the record submitted by either party addressing what particular electronic information Plaintiff requested and Defendants failed to provide, why that information was not provided in discovery or was provided in an untimely manner, and how that information is relevant to the remaining

claims and defenses in this case. Accordingly, Plaintiff's

motion is denied on this point.[4]

### 7. Affirmative Defenses

Finally, Plaintiff seeks summary judgment on all of

Defendants' affirmative defenses asserted in their Answer to the

Amended Complaint. [See Docket Item 21.] Defendants propound the

following defenses:

(1) The within action is barred or limited in accordance
with the provisions of the Comparative Negligence Act
and N.J.S.A. 2A:15-5.1, et seq.

(2) The defendant was not guilty of any negligence

(3) Any injury, damage or loss sustained was the result of
the negligence of third parties over whom this
defendant had no control.

(4) Plaintiff have [sic] recovered the costs of medical
care, dental care, custodial care, rehabilitation
services, loss of earnings and other economic loss and
any future such loss or expense will, with reasonable
probability, be replaced or indemnified in whole or in
part from collateral sources. Any award made to
plaintiff shall be reduced in accordance with the
provisions of N.J.S.A. 2A:15-97.

(5) The Complaint fails to allege facts or set forth a
cause of action upon which relief can be granted.

(6) Any injury, damage or loss sustained was the result of
the sole negligence of the plaintiff.

---

[4] Neither party addresses the key issue of whether New Jersey law
recognizes a spoliation cause of action and the contours or
essential elements of such a tort. Nor does either party address
the procedure for assessing spoliation of evidence and
determining its consequences presented in the 2015 amendments to
F. R. Civ. P. 37(e). If Plaintiff is to press spoliation as a
trial issue, the matter shall first be fully briefed.

(7) Any injury, damage or loss sustained was the result of an unavoidable accident.

(8) Any injury, damage or loss sustained was the result of the contributory negligence of the plaintiff.

Answer at 7-8.

Defendants have pointed to no evidence in the record that Plaintiff, or another third party, may have been negligent in this case in a way that caused or contributed to Plaintiff's injuries. With respect to Defendants' fourth affirmative defense, Defendants have not adduced any evidence in the record before the Court that Plaintiff received compensation for her injuries from any collateral source. Similarly, Defendants have not explained what "unavoidable accident," relevant to the seventh affirmative defense, caused Plaintiff's injuries. Defendants' failure to produce evidence in opposition to Plaintiff's motion on these defenses will preclude them from raising these defenses at trial because "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 323 (1986). Given the absence of evidence, there are no genuine issues of fact as to Defendants' first, third, fourth, sixth, seventh and eighth

affirmative defenses, and summary judgment is proper on these claims.

Plaintiff is not entitled to summary judgment on Defendants' second and fifth affirmative defenses – asserting that Defendant was not guilty of negligence and that the Complaint fails to state a claim – for the reasons that Plaintiff's partial motion for summary judgment on her negligence claim is denied. Accordingly, Plaintiff's motion is denied as to Defendants' second and fifth affirmative defenses.

**V. CONCLUSION**

An accompanying Order will be entered.

 

 

 

__December 22, 2016__                    **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         Chief U.S. District Judge